**IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION**

**ROSHNI PATEL,**

      **Plaintiff,**

**vs.**                                                   **CIVIL ACTION NO. 7:22-CV-00118**

**OM JANIE, LLC, d/b/a SKATE
and PLAY FAMILY FUN CENTER,
NIRAL PATEL and JANKI PATEL
     Defendant.**

_____

### ANSWER AND DEFENSES OF DEFENDANTS OM JANIE, LLC, NIRAL PATEL, AND JANKI PATEL

COMES NOW OM Janie, LLC, improperly identified as d/b/a Skate and Play Family Fun Center and referred to herein as "OM Janie"; Niral Patel; and Janki Patel, collectively referred to herein as "Defendants," and files this their answer and defenses to the complaint of Plaintiff Roshni Patel ("Plaintiff"), showing the Court as follows:

### FIRST DEFENSE

For a first defense, Defendants show that Plaintiff's complaint fails to state a claim against him upon which relief can be granted.

### SECOND DEFENSE

For a second defense, Defendants show that plaintiff has failed to allege that Plaintiff's employment relationship with any of the Defendants is covered by the provisions of the Fair Labor Standards Act ("FLSA").

## THIRD DEFENSE

For a third defense, Defendants show that, at all relevant times, the Defendants acted in good faith with regard to any employment relationship with Plaintiff, to the extent there was one, and the provisions of the FLSA.

## FOURTH DEFENSE

For a fourth defense, Defendants show that, to the extent Defendants committed any violation of the provisions of the FLSA, that any such violation was not willful.

## FIFTH DEFENSE

For a fifth defense, Defendants show that Plaintiff has failed to join indispensable parties. Thus, Plaintiff's complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(7) and Fed. R. Civ. P. 19.

## SIXTH DEFENSE

For a sixth defense, Defendants assert all other defenses available to it under law such as shall become apparent through discovery in this action.

## SEVENTH DEFENSE

For a seventh defense, Defendants respond to the allegations contained in the numbered paragraphs of Plaintiff's complaint, as follows:

1.      In response to the allegations contained in Paragraph 1 of Plaintiff's complaint, Defendants admit that in this action Plaintiff has asserted wage and hour claims for allegedly unpaid minimum wages and overtime compensation under the Fair Labor Standards Act (the "FLSA") and a claim for minimum wages under O.C.G.A. § 34-4-3.   In further response, Defendants deny that Plaintiff is entitled to recover from Defendants as alleged in Plaintiff's complaint.

2.      In response to the allegations contained in Paragraph 2 of Plaintiff's compliant, Defendants admit that Plaintiff worked for Skate and Play Family Fun Center and Niral Patel. Defendants deny any and all remaining allegations contained in Paragraph 2 of Plaintiff's complaint.

3.      Defendants admit the allegations contained in Paragraph 3 of Plaintiff's complaint.

4.      Defendants admit the allegations contained in Paragraph 4 of Plaintiff's complaint.

5.      Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 5 of Plaintiff's complaint.

6.      Defendants admit the allegations contained in Paragraph 6 of Plaintiff's complaint.

7.      Defendants admit the allegations contained in Paragraph 7 of Plaintiff's complaint.

8.      Defendants admit the allegations contained in Paragraph 8 of Plaintiff's complaint.

9.      Defendants admit the allegations contained in Paragraph 9 of Plaintiff's complaint.

10.     Defendants admit the allegations contained in Paragraph 10 of Plaintiff's complaint.

11.     Defendants admit the allegations contained in Paragraph 11 of Plaintiff's complaint.

12.     Defendants admit the allegations contained in Paragraph 12 of Plaintiff's complaint.

13.     Defendants admit the allegations contained in Paragraph 13 of Plaintiff's complaint.

14.     Defendants admit the allegations contained in Paragraph 14 of Plaintiff's complaint.

15.     Defendants deny the allegations contained in Paragraph 15 of Plaintiff's complaint.

16.     Defendants deny the allegations contained in Paragraph 16 of Plaintiff's complaint.

17.     Defendants deny the allegations contained in Paragraph 17 of Plaintiff's complaint.

18.     Defendants deny the allegations contained in Paragraph 18 of Plaintiff's complaint.

19.     Defendants deny the allegations contained in Paragraph 19 of Plaintiff's complaint.

20.     Defendants deny the allegations contained in Paragraph 20 of Plaintiff's complaint.

21.     In response to the allegations contained in Paragraph 21 of Plaintiff's complaint, Defendants admit that Skate and Play is a skating rink and entertainment center offering roller skating, arcade games, and laser tag facilities, which is located in Valdosta, Georgia.  Defendants deny any and all remaining allegations contained in Paragraph 21 of Plaintiff's complaint.  In particular, Defendants deny that OM Janie owns and operates Skate and Play.

22.     Defendants deny the allegations contained in Paragraph 22 of Plaintiff's complaint.

23.     Defendants deny the allegations contained in Paragraph 23 of Plaintiff's complaint.

24.     Defendants deny the allegations contained in Paragraph 24 of Plaintiff's complaint.

25.     Defendants admit the allegations contained in Paragraph 25 of Plaintiff's complaint.

26.     Defendants deny the allegations contained in Paragraph 26 of Plaintiff's complaint.

27.     Defendants admit the allegations contained in Paragraph 27 of Plaintiff's complaint.

28.     Defendants admit the allegations contained in Paragraph 28 of Plaintiff's complaint.

29.     Defendants admit the allegations contained in Paragraph 29 of Plaintiff's complaint.

30.     Defendants admit the allegations contained in Paragraph 30 of Plaintiff's complaint.

31.     Defendants admit the allegations contained in Paragraph 31 of Plaintiff's complaint.

32.     In response to the allegations contained in Paragraph 32 of Plaintiff's complaint, Defendants admit that, as the sole member and manager of OM Janie, Janki Patel would have supervisory authority over OM Janie and any employees of OM Janie.  In further response, Defendants deny that, at all relevant times, Plaintiff or anyone else was employed by OM Janie. Defendants deny and all remaining allegations contained in Paragraph 32 of Plaintiff's complaint.

33.     Defendants admit the allegations contained in Paragraph 33 of Plaintiff's complaint.

34.     Defendants admit the allegations contained in Paragraph 34 of Plaintiff's complaint.

35.     Defendants admit the allegations contained in Paragraph 35 of Plaintiff's complaint.

36.     Defendants admit the allegations contained in Paragraph 36 of Plaintiff's complaint.

37.     In response to the allegations contained in Paragraph 37 of Plaintiff's complaint, Defendants admit that Plaintiff was hired to work at Skate and Play and that, at times during Plaintiff's employment, she was entrusted with the day-to-day management of Skate and Play. Defendants deny any and all remaining allegations contained in Paragraph 37 of Plaintiff's complaint.

38.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 38 of Plaintiff's complaint.

39.     In response to the allegations contained in Paragraph 39 of Plaintiff's complaint, Defendants admit that Janki Patel agreed to assist Plaintiff with the purchase of a house located at 1102 Meadow Road, Valdosta, Georgia 31605 (the "House").  Defendants deny any and all remaining allegations contained in Paragraph 39 of Plaintiff's complaint.

40.     In response to the allegations contained in Paragraph 40 of Plaintiff's complaint, Defendants admit that Plaintiff provided Janki Patel with money for use as a down payment on a mortgage related to the purchase of  the House (the "Mortgage") and that Plaintiff agreed to reimburse Janki Patel for payments towards the Mortgage through a lease agreement by which Janki Patel would make monthly mortgage payments related to the House and then lease the House to Plaintiff (the "Purchase and Lease Agreement").  Further, Defendants admit that Plaintiff agreed to carry on and perform pursuant to this Purchase and Lease Agreement until such time as she could procure financing and take over the Mortgage.  Defendants deny any and all remaining allegations contained in Paragraph 40 of Plaintiff's complaint.

41.     In response to the allegations contained Paragraph 41 of Plaintiff's complaint, Defendants admit that Plaintiff began her employment at Skate and Play on or around February 4, 2022.  Defendants, however, deny the characterization of Plaintiff's employment as a "manager," and, in particular, deny that Plaintiff worked as a manager at the time she was first hired on February 4, 2022.  Defendants deny any and all remaining allegations contained in Paragraph 41 of Plaintiff's complaint.

42.     Defendants deny the allegations contained in Paragraph 42 of Plaintiff's complaint.

43.     Defendants deny the allegations contained in Paragraph 43 of Plaintiff's complaint.

44.     In response to the allegations contained in Paragraph 44 of Plaintiff's complaint, Defendants admit that Plaintiff worked at Skate and Play until August 18, 2022.  Defendants deny any and all remaining allegations contained in Paragraph 44 of Plaintiff's complaint.

45.     In response to the allegations contained in Paragraph 45 of Plaintiff's complaint, Defendants admit that Plaintiff's wages from February 4, 2022 through August 4, 2022 were withheld as recompense for the payments Plaintiff owed under the Purchase and Lease Agreement because Plaintiff had not provided payments owed to Janki Patel under the Purchase and Lease Agreement.   Defendants deny and all remaining allegations contained in Paragraph 45 of Plaintiff's complaint.

46.     In response to the allegations contained in Paragraph 46 of Plaintiff's complaint, Defendants admit that Plaintiff's wages have been withheld as recompense for the payments Plaintiff owed under the Purchase and Lease Agreement because Plaintiff had not provided payments owed to Janki Patel under the Purchase and Lease Agreement.  Defendants deny and all remaining allegations contained in Paragraph 46 of Plaintiff's complaint.

47.     Defendants deny the allegations contained in Paragraph 47 of Plaintiff's complaint.

48.     Defendants deny the allegations contained in Paragraph 48 of Plaintiff's complaint.

49.     Defendants deny the allegations contained in Paragraph 49 of Plaintiff's complaint.

50.     Defendants deny the allegations contained in Paragraph 50 of Plaintiff's complaint.

51.     Defendants deny the allegations contained in Paragraph 51 of Plaintiff's complaint.

52.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 52 of Plaintiff's complaint.

53.     In response to the allegations contained in Paragraph 53 of Plaintiff's complaint, Defendants admit that, throughout Plaintiff's employment, Plaintiff was not paid an hourly rate

above or equal to the minimum wage because Plaintiff's wages were withheld as recompense for the payments Plaintiff owed under the Purchase and Lease Agreement.  Defendants deny and all remaining allegations contained in Paragraph 53 of Plaintiff's complaint.

54.     Defendants deny the allegations contained in Paragraph 54 of Plaintiff's complaint.

55.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 55 of Plaintiff's complaint.

56.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 56 of Plaintiff's complaint.

57.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 57 of Plaintiff's complaint.

58.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 58 of Plaintiff's complaint.

59.     Defendants deny the allegations contained in Paragraph 59 of Plaintiff's complaint.

60.     In response to the allegations contained in Paragraph 60 of Plaintiff's complaint, Defendants admit that Plaintiff was not paid an overtime premium of one-half her regular hourly rate for work in excess of forty (40) hours.  Defendants, however, deny the characterization in Paragraph 60 that Plaintiff was entitled to such an overtime premium "each week from February 4, 2022, through August 18, 2022" and deny that Plaintiff was entitled to such an overtime premium at any time.  Defendants deny any and all remaining allegations contained in Paragraph 60 of Plaintiff's complaint.

61.     Defendants deny the allegations contained in Paragraph 61 of Plaintiff's complaint.

62.     Defendants deny the allegations contained in Paragraph 62 of Plaintiff's complaint.

63.     Defendants deny the allegations contained in Paragraph 63 of Plaintiff's complaint.

64.    Defendants deny the allegations contained in Paragraph 64 of Plaintiff's complaint.

65.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 65 of Plaintiff's complaint.

66.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 66 of Plaintiff's complaint.

67.    In response to the allegations contained in Paragraph 67 of Plaintiff's complaint, Defendants admit that, throughout Plaintiff's employment, Plaintiff was not paid an hourly rate above or equal to the minimum wage because Plaintiff's wages were withheld as recompense for the payments Plaintiff owed under the Purchase and Lease Agreement by Plaintiff.  Defendants deny and all remaining allegations contained in Paragraph 67 of Plaintiff's complaint.

68.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 68 of Plaintiff's complaint.

69.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 69 of Plaintiff's complaint.

70.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 70 of Plaintiff's complaint.

In response to the unnumbered paragraph beginning with "WHEREFORE, Plaintiff respectfully prays . . ." and the sub-paragraphs numbered 1, 2, 3, 4, 5, 6, 7, and 5 thereunder, Defendants deny that Plaintiff is entitled to any relief from Defendants as alleged in Plaintiff's complaint.

WHEREFORE, having fully answered, Defendants pray that they be discharged without costs or liability in the premises; in the alternative, Defendants that this matter be tried before a jury.

## COUNTERCLAIMS OF DEFENDANTS NIRAL PATEL AND JANKI PATEL

COMES NOW Niral Patel and Janki Patel (collectively referred to hereinafter as the "Patels") and file this their Counterclaims showing the Court as follows:

## PARTIES, JURISDICTION, AND VENUE

1.      Counter-Plaintiff Niral Patel (hereinafter "Niral Patel") is a natural person who resides in Lowndes County, Georgia.

2.      Counter-Plaintiff Janki Patel (hereinafter "Janki Patel") is a natural person who resides in Lowndes County, Georgia.

3.      Counter-Defendant Roshni Patel (hereinafter "Counter-Defendant") is a natural person residing in Lowndes County, Georgia.

4.      Counter-Defendant is subject to the personal jurisdiction of this Court.

5.      This Court has subject matter jurisdiction over the counterclaims asserted by the Patels through supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

6.      Venue regarding the Patels' counterclaims properly lies in the Middle District of Georgia under 28 U.S.C. § 1391 because the Patels' business is located in this judicial district and a substantial portion of the events giving rise to the claims herein arose in this judicial district.

## FACTUAL BACKGROUND

The Patels assert the following facts in support of their counterclaims:

**1. The Purchase and Lease Agreement and Residential Lease Agreement**

7.      Sometime before January 1, 2022, Counter-Defendant approached the Patels and sought their assistance with the purchase of a house located at 1102 Meadow Road, Valdosta, Georgia 31605 (the "House").

8.     Counter-Defendant was unable to procure financing on her own for the purchasing of the House.

9.     Janki Patel and Counter-Defendant entered into an agreement in which Janki Patel would take out a mortgage for the purchase of the House for use by Counter-Defendant; that Counter-Defendant would eventually take over that mortgage when Counter-Defendant was able to procure financing on her own; and, in the interim, that Counter-Defendant would lease the house from Janki Patel (the "Purchase and Lease Agreement").

10.    Specifically, the terms of the Purchase and Lease Agreement were as follows:

a.     Janki Patel agreed that she would take out a mortgage for the purchase of the House and would thus be ultimately responsible for payments related to that mortgage.

b.     In exchange, Counter-Defendant agreed to provide money to Janki Patel for use as a down payment on the mortgage for the purchase of the House, and Counter-Defendant agreed that she would eventually take over that mortgage related to the purchase of the house.

c.     Further, Janki Patel agreed to lease the house to Counter-Defendant in exchange for monthly payments to be paid by Counter-Defendant that would compensate Janki Patel for the mortgage payments owed and paid for by Janki Patel related to the purchase of the house.

11.    Pursuant to the Purchase and Lease Agreement, Counter-Defendant provided Janki Patel with $60,000 to be used as a down payment for the purchase of the "House," and Janki Patel procured financing for the purchase of the House through a limited liability company for which she is the sole member, Vyom Enterprises LLC ("Vyom").

11

12.     To that end, Vyom, at the direction of Janki Patel, purchased the House and signed a mortgage agreement related the House (the "Mortgage") under which Patel, through Vyom, was required to pay $1,600 a month.

13.     Thereafter, Counter-Defendant entered into a written agreement for the lease of the House under which Plaintiff would provide monthly payments of $2,000 to Janki Patel and Vyom (the "Residential Lease Agreement").   A true and accurate copy of the Residential Lease Agreement, which is signed by Counter-Defendant, is attached hereto as Exhibit A.

14.     The Residential Lease Agreement was intended to memorialize the lease portion of the Purchase and Lease Agreement between Counter-Defendant and the Patels.

15.     Pursuant to the Purchase and Lease Agreement and Residential Lease Agreement, Counter-Defendant resided in the House from January 1, 2022 (the effective date of the Residential Lease Agreement) until December 2022.

16.     During the twelve months that Plaintiff lived at the House, Counter-Defendant failed to make any monthly rental payments to Janki Patel and Vyom as was required under the Purchase and Lease Agreement and the Residential Lease Agreement.

17.     On or around November 8, 2022, through dispossessory proceedings in the Magistrate Court of Lowndes County, Georgia, *Vyom Enterprises LLC v. Roshniben Patel*, Civil Action # 2022D04592 (the "Dispossessory Proceedings"), Vyom obtained a dispossessory order requiring Counter-Defendant to move out of the House (the "Dispossessory Order").

18.     Pursuant to the Dispossessory Order, Counter-Defendant vacated the House on or around December 2022.

19.     Under the terms of the Residential Lease Agreement, Counter-Defendant was required to "maintain the premises in good condition," and Plaintiff was responsible for "all necessary repairs to the [House]." Exh. A., p. 1.

20.     Upon exiting the House, Counter-Defendant failed to leave the House in good condition and failed to make necessary repairs to the House.

**2.  Plaintiff's employment with Skate and Play**

21.     Defendant Niral Patel owns and operates a skating rink and entertainment center in Valdosta, Ga. doing business as Skate and Play Family Fun Center ("Skate and Play").

22.     On or around February 4, 2022, Counter-Defendant was hired to work at Skate and Play.

23.     Counter-Defendant was hired to assist with the management, maintenance, and operation of Skate and Play, which included but was not limited to running the cash register at Skate and Play and assisting with the management of the day-to-day finances and sales of Skate and Play.

24.     Pursuant to Counter-Defendant's job responsibilities, she had access to the cash funds belonging to Skate and Play and understood that she had a responsibility to ensure the funds were properly accounted for.

25.     Counter-Defendant represented to Skate and Play and the Patels that she would carry out this job responsibility and truthfully and dutifully care for the cash funds of Skate and Play.

26.     For the first few months of Counter-Defendant's employment, Counter-Defendant worked under the direct supervision of another employee of Skate and Play.

27.     On or around May 2022, Counter-Defendant took over the day-to-day management of Skate and Play, under the supervision of the Patels.

28.     Counter-Defendant worked in this role until she left her employment with Skate and Play in August 2022.

29.     After May 2022, when Counter-Defendant had taken over the day-to-day management of Skate and Play and had full access to the cash register and cash funds of the business, the cash sales at Skate and Play dropped off dramatically as compared to prior periods.

30.     This drop in cash sales at Skate and Play continued until the time that Counter-Defendant left her employment with Skate and Play in August 2022.

31.     Sometime after June 2022, the Patels became aware of the noted drop in cash sales at Skate and Play.

32.     In response, the Patels installed a camera at Skate and Play with a view of the cash register so that they could monitor Counter-Defendant and other employees.

33.     The Patels then monitored the camera to detect whether Counter-Defendant or any other employees were mishandling the cash at the cash register.

34.     The video from the camera showed Counter-Defendant mishandling cash payments at the cash register of Skate and Play.

35.     As a part of her employment duties, Counter-Defendant was expected to make a report of the amount of funds in the cash register at the end of the day (the "Daily Reports"); as a part of these Daily Reports, Counter-Defendant was expected to list the amount of cash sales and credit card sales each day and list the amount of cash in the cash register.

36.     In addition to the installation of the camera at Skate and Play, the Patels also began to closely monitor Counter-Defendant's Daily Reports.

14

37.     Through monitoring Counter-Defendant's Daily Reports, the Patels discovered that the cash amounts listed in Counter-Defendant's Daily Reports did not match the actual amounts of cash in the register.

38.     Upon information and belief and based on the video from the camera and the false reports submitted by Counter-Defendant, Counter-Defendant embezzled and/or stole cash funds from Skate and Play by taking money from the cash register and distorting the stated amounts of cash sales in her Daily Reports.

39.     The Patels confronted Plaintiff with their suspicions that she was stealing from Skate and Play and demanded that any funds taken from Skate and Play be returned.

40.     After being confronted with their accusations, Counter-Defendant did not deny that she had taken money from the business and refused to offer any repayment.

41.     Soon thereafter, Counter-Defendant's employment with Skate and Play was terminated.

Based on the foregoing, the Patels assert the following claims:

<u>COUNTERCLAIM I:  BREACH OF CONTRACT –
FAILURE TO MAKE RENTAL PAYMENTS</u>
(Asserted by Janki Patel against Counter-Defendant)

42.     The Patels re-allege the facts alleged in Paragraphs 1 through 41 as if stated fully herein.

43.     Janki Patel and the Counter-Defendant entered into an enforceable verbal agreement in the form of the Purchase and Lease Agreement.

44.     Further, Janki Patel and Counter-Defendant entered into an enforceable written agreement in the form of the Residential Lease Agreement.

45.   As consideration, Janki Patel agreed to purchase the House and to be responsible for the mortgage payments related thereto until such time as Counter-Defendant could procure financing and take over the Mortgage.

46.   Further, Janki Patel agreed to lease the House to Counter-Defendant, until such time as Counter-Defendant could take over the mortgage of the House, in exchange for monthly rental payments of $2,000 per month.

47.   Janki Patel performed pursuant to the Purchase and Lease Agreement and the Residential Lease Agreement as follows:

a.   Janki Patel (through Vyom) took out the Mortgage and purchased the House.

b.   From January 1, 2022 until present, Janki Patel ensured that the Mortgage payments were paid pursuant to the Purchase and Lease Agreement.

c.   Janki Patel allowed Counter-Defendant to reside in the House, despite Counter-Defendant not making the monthly payments required under the Residential Lease Agreement, from January 2022 until December 2022.

48.   Counter-Defendant, meanwhile, failed to perform pursuant to the Purchase and Sale Agreement and the Residential Lease Agreement by failing to make a single monthly payment related to her lease of the House, and Janki Patel properly notified Plaintiff of her failure to make payments pursuant to the Residential Lease Agreement.

49.   Accordingly, Counter-Defendant committed a material breach of both the Purchase and Sale Agreement and the Residential Lease Agreement.

50.   Janki Patel has suffered damages in the form of the monthly payments that Counter-Defendant failed to pay, in an amount, to date, of $24,000.

16

## COUNTER CLAIM II:  BREACH OF CONTRACT –
## FAILURE TO REPAIR AND MAINTAIN THE HOUSE
(Asserted by Janki Patel against Counter-Defendant)

51.     The Patels re-allege the facts alleged in Paragraphs 1 through 50 as if stated fully herein.

52.     Further, Janki Patel and Counter-Defendant entered into an enforceable written agreement in the form of the Residential Lease Agreement.

53.     Counter-Defendant signed the Residential Lease Agreement as shown in Exhibit A and thus consented to its terms.

54.     Janki Patel performed as required under the Residential Lease Agreement.

55.     Under the Residential Lease Agreement, Counter-Defendant was required to maintain the House and repair any damage to the House.

56.     Specifically, the Residential Lease Agreement states as follows regarding Counter-Defendant's duty to maintain the House in good repair:

**5. Repairs and Maintenance**

During the Lease term, Tenant shall make, at Tenant's expense, all necessary repairs to the Leased Premises.  Repairs shall include such items as routine repairs of floors, walls, ceilings, and other parts of the Leased Premises damaged or worn through normal occupancy, except for major mechanical systems or the roof, subject to the other obligations of the parties otherwise set forth in this Lease. Tenant shall maintain the premises in good condition (good condition being described as the condition said premises were in upon tenant(s) taking possession). The failure of the tenant to so maintain said premises shall constitute a default.

Exhibit A, p. 1.

57.     After Counter-Defendant vacated the House pursuant to the Dispossessory Order, Janki Patel found that Counter-Defendant had left the House in disrepair with damage to the interior and exterior of the House.

17

58.     In addition, Janki Patel found that Counter-Defendant had damaged the appliances in the House and left them in disrepair.

59.     Accordingly, Counter-Defendant failed to perform under the Residential Lease Agreement and committed a material breach of that agreement.

60.     Janki Patel has suffered damages as a result of Counter-Defendant's breach of the Residential Lease Agreement in an amount to be proven at trial.

**COUNTERCLAIM III:**
**UNJUST ENRICHMENT OR *QUANTUM MERUIT***
(Asserted by Janki Patel against Counter-Defendant)

61.     Janki Patel re-alleges the facts alleged in Paragraphs 1 through 60 as if stated fully herein.

62.     Based on the facts alleged herein, at a minimum, there was an implied agreement between Janki Patel and Counter-Defendant in the form of the Purchase and Lease Agreement and the Residential Lease Agreement.

63.     Janki Patel performed pursuant to the Purchase and Lease Agreement and the Residential Lease Agreement through the purchase of the House and leasing the House to Counter-Defendant.

64.     Janki Patel's performance under the Purchase and Lease Agreement and the Residential Lease Agreement provided value to Counter-Defendant by providing her with the use of the House.

65.     Counter-Defendant was aware of Janki Patel's performance under the Purchase and Lease Agreement and the Residential Lease Agreement.

66.     Indeed, Counter-Defendant solicited Janki Patel's performance under the Purchase and Lease Agreement and the Residential Lease Agreement through her representations that she would perform under these agreements.

67     Janki Patel expected to be compensated for her performance under these agreements.

68.     It would be unjust for Janki Patel to not be compensated for her performance under these agreements.

69.     Counter-Defendant has not provided Janki Patel with any monthly payments as required under the Purchase and Lease Agreement and the Residential Lease Agreement despite being granted the use of the House from January 2022 through December 2022.

70.     As such, Counter-Defendant has been unjustly enriched, and Janki Patel is entitled to damages in an amount to be proven at trial.

## COUNTERCLAIM IV:  FRAUD
(Asserted by the Niral Patel against Counter-Defendant)

71.     The Patels re-allege the facts alleged in Paragraphs 1 through 70 as if stated fully herein.

72.     Counter-Defendant made false representations to Niral Patel and Skate and Play with scienter and knowledge of the falsity of these representations; these false representations include the following:

a.   Counter-Defendant represented to Niral Patel and Skate and Play that she would faithfully and dutifully manage the day-to-day finances of Skate and Play;

b.   Counter-Defendant falsely stated the funds received by Skate and Play from cash sales through her intentionally false and misleading Daily Reports;

c.  Counter-Defendant embezzled company funds of Skate and Play and used those funds for improper purposes, in particular, upon information and belief, Counter-Defendant took cash funds from the Skate and Play cash register and then falsified the cash sales for each day to cover up her embezzlement;

d.  Counter-Defendant failed to disclose her unauthorized use of company funds for personal expenses and personal benefit.

73.    Counter-Defendant made these false representations with the intent to induce Niral Patel and Skate and Play to entrust her with the management of the day-to-day finances and the funds of Skate and Play.

74.    Niral Patel and Skate and Play justifiably relied upon its trust and the false representations and omissions of facts by Counter-Defendant that proximately caused damage to Niral Patel and Skate and Play in an amount to be proven at trial.

## COUNTERCLAIM V:  MONEY HAD AND RECEIVED / UNJUST ENRICHMENT
### (Asserted by Niral Patel against Counter-Defendant)

75.    The Patels re-allege the facts alleged in Paragraphs 1 through 74 as if stated fully herein.

76.    As a result of the actions described in Paragraph 38, supra, Counter-Defendant received funds that are rightly the property of Skate and Play and Niral Patel, and is unjustly retaining those funds.

77.    Niral Patel, as owner of Skate and Play, has an immediate right to and in these funds, and their continued retention by Counter-Defendant would result in Counter-Defendant's unjust enrichment.

78.    Niral Patel and Skate and Play have demanded the surrender of these funds and that demand has gone unanswered or been refused.

79.     Niral Patel has been damaged by Counter-Defendant's unjust enrichment in an amount to be proven at trial.

## COUNT VI:  BREACH OF FIDUCIARY DUTY
(Asserted by Niral Patel against Counter-Defendant)

80.     The Patels re-allege the facts alleged in Paragraphs 1 through 79 as if stated fully herein.

81.     Through her employment with Skate and Play, which required her to manage the day-to-day finances and operations of Skate and Play, Counter-Defendant enjoyed a position of trust and a confidential relationship with Skate and Play and Niral Patel.  Counter-Defendant served as an agent in most respects of daily company operations and was entrusted with the safekeeping of its funds and tangible property.

82.     Accordingly, Counter-Defendant owed fiduciary duties to Niral Patel and Skate and Play.

83.     Counter-Defendant breached her fiduciary duty to Niral Patel and Skate and Play by embezzling their funds for her own personal use and by failing to perform her duties and acting in bad faith in the performance of her duties.

84.     Niral Patel and Skate and Play were damaged by Counter-Defendant's breach of her fiduciary duty through the cash funds that were embezzled by Counter-Defendant in an amount to be proven at trial.

## COUNT VII:  PUNITIVE DAMAGES
(Asserted by the Patels against Counter-Defendant)

85.     The Patels re-allege the facts alleged in Paragraphs 1 through 84 as if stated fully herein.

86.     Counter-Defendant's actions as described above show willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.  Therefore, the Patels pray for punitive damages.

<h3 align="center">COUNT VIII:  ATTORNEY'S FEES</h3>
(Asserted by the Patels against Counter-Defendant)

87.     The Patels re-allege the facts alleged in Paragraphs 1 through 86 as if stated fully herein.

88.     Counter-Defendant's actions, as described above, were undertaken in bad faith, and in fact constituted intentional torts with willful, wanton, or reckless disregard of the rights of the Patels.  Counter-Defendant has also acted in bad faith in forcing this matter to litigation.  Counter-Defendant's actions have caused the Patels unnecessary trouble and expense, entitling the Patels to recover the costs and expenses of litigation, including attorneys' fees pursuant to O.C.G.A. § 13-6-11.

<h3 align="center">PRAYER FOR RELIEF</h3>

Wherefore, the Counter-Plaintiffs Niral Patel and Janki Patel pray for the following relief:

a.   Compensatory damages, including interest, in an amount to be determined at trial;

b.   Exemplary and punitive damages, in an amount to be determined at trial;

c.   Exemplary and punitive damages, in an amount to be determined at trial;

d.   Costs in this action;

e.   Attorneys' fees in this action pursuant to O.C.G.A. § 13-6-11 or other applicable law;

f.   Such additional relief at this Court deems just and appropriate; and

g.   Trial by jury.

22

Respectfully submitted this 14th day of December, 2022.

> _s/ H, Thomas Shaw_
> H. Thomas Shaw
> Georgia State Bar No. 593166
> Alexander & Vann LLP
> 411 Gordon Avenue
> Thomasville, Georgia 31792
> (229) 226-2565
> tshaw@alexandervann.com
> _Attorney for Defendants_

## CERTIFICATE OF SERVICE

I hereby certify that on December 14, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

> _s/H. Thomas Shaw_
> H. Thomas Shaw