IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| ROSHNI PATEL, : | |
|     Plaintiff, : | |
| : | |
|     v. : | CASE NO.: 7:22-CV-000118 |
| : | |
| OM JANIE, LLC, d/b/a SKATE and : | |
| PLAY FAMILY FUN CENTER, : | |
| NIRAL PATEL and JANKI PATEL : | |
| : | |
|     Defendant. : | |
| _____ : | |

**ORDER**

    Presently before the Court is Plaintiff's Motion to Dismiss Defendant's Counterclaims (Doc. 10), Plaintiff's Motion to Partially Stay Discovery (Doc. 12) and Plaintiff's Motion to Dismiss Defendant's Amended Counterclaims.[1] (Doc. 14.) Therein, Plaintiff contends that Defendants' Counterclaims as well as Amended Counterclaims should be dismissed pursuant to Federal Rule Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, or in the alternative because Defendants' counterclaims would violate the *Brennan* rule. (Docs. 10 & 14.) *See Brennan v. Heard*, 491 F.2d 1 (5th Cir. 1974.)[2] As Plaintiff's Motion to Dismiss the Amended Counterclaims is made on almost entirely the same grounds (Doc. 14 at 1) this Court shall review both motions (Docs. 10 & 14) simultaneously.

    For the reasons that follow, Plaintiff's Motion to Dismiss Defendants' Amended Counterclaims is **GRANTED**. It is hereby **ORDERED** that Defendants' Amended state-law counterclaims are **DISMISSED without prejudice**. It is further, hereby **ORDERED** that Plaintiff's Motion for a Partial Stay of Discovery (Doc. 12) is **DENIED as Moot** and that Plaintiff's Motion to Dismiss Defendants' Counterclaims (Doc. 10) is **DENIED as MOOT.**

---

[1] The Court notes for the purposes of the Order that Plaintiff will be referred to as Plaintiff, not Counter-Defendant, and Defendants will be referred to as Defendants, not Counter-Plaintiffs.

[2] The United States Court of Appeals has adopted as binding precedent all Fifth Circuit decisions issued prior to October 1, 1981. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

## PROCEDURAL HISTORY

On October 31, 2022, Plaintiff filed a Complaint in the above styled case, alleging violations of the Fair Labor Standards Act ("FLSA") or in the alternative violations of Georgia's minimum wage laws, O.C.G.A. § 34-4-3. (Doc. 1.) Therein, Plaintiff contends that she is entitled FLSA minimum wages, as well as overtime premiums set forth in 29 U.S.C. § 207(a), or in the alternative recovery under Georgia's minimum wage laws. (*Id.*)

After requesting an extension of time to file an Answer, which was granted, (Docs. 6 & 7), Defendants filed an Answer on December 14, 2022. (Doc. 8.) Included within Defendants' Answer were six (6) state law counterclaims. (Doc. 8.) Specifically, Defendants assert the following state-law counterclaims: (1) breach of contract, failure to make rental payments, (2) breach of contract, failure to repair, (3) unjust enrichment or quantum meruit, (4) fraud, (5) money had and received or unjust enrichment, and (6) breach of fiduciary duty. (Doc. 8.) Defendants also counterclaimed for punitive damages as well attorney's fees. (Doc. 8.)

The following day, on December 15, 2022, Plaintiff filed a Motion to Dismiss Defendants' Counterclaims. (Doc. 15.) Therein, Plaintiff contends that Defendants' Counterclaims should be dismissed as this Court lacked subject matter jurisdiction, or in the alternative, Defendants' Counterclaims violated the *Brennan* Rule. (*Id.*) Plaintiff also filed a Motion to Partially Stay Discovery pending this Court's ruling on Plaintiff's Motion to Dismiss. (Doc. 12.)

Defendants never responded to Plaintiff's initial Motion to Dismiss Defendants' Counterclaims, instead electing to file an Amended Answer and Counterclaims on January 4, 2023. (Doc. 13.) Defendants did not amend their counterclaims in that filing, but rather incorporated additional facts upon information and belief, which Defendants contend confer supplemental jurisdiction. (Doc. 13.) The day after Defendants filed their Amended Answer and Counterclaims (Doc. 13) Plaintiff filed a Motion to Dismiss the Amended Counterclaims. (Doc. 14.) Therein, Plaintiff moved to dismiss Defendants' Counterclaims "on almost entirely the same grounds." (Doc. 14.)

Defendants have since filed Responses in Opposition to Plaintiff's Motion to Dismiss and Plaintiff's Motion to Partially Stay Discovery (Docs. 16 & 18) and Plaintiff has Replied (Docs. 19 & 21.) Accordingly, briefing has now concluded, and these issues are ripe for disposition.

## **RELEVANT FACTUAL SUMMARY**

On or about February 4, 2022, Plaintiff was hired to work at Defendants' business, the Skate and Play Family Fun Center. (Docs. 1 at 5 & 13 at 13.) For the first few months of Plaintiff's employment, Plaintiff worked under the direct supervision of another employee of Defendants' business. (Doc. 13 at 13.) On or about May 2022, however, Plaintiff took over the day-to-day management of Defendants' business under the supervision of Defendants. (Doc. 13 at 14.) As part of Plaintiff's responsibilities, Plaintiff was tasked with running the cash register and assisting management with the day-to-day finances and sales of Defendants' business.[3] (Doc. 13 at 13.)

During Plaintiff's period of employment at Defendants' business, Plaintiff routinely failed to utilize Skate and Play's clock-in system to show the days and hours she was actually working. (Doc. 13 at 14.) Plaintiff would instead provide Defendants with handwritten notes stating her days and hours worked, with no additional proof. (Doc. 13 at 14.) According to Plaintiff, she regularly worked in excess of sixty (60) hours a week, seven (7) days a week, without days off. (Doc. 1 at 5.) It is Defendant's position, upon information and belief, that Plaintiff misrepresented the hours and days Plaintiff actually worked at Skate and Play. (Doc. 13 at 14.)

After Plaintiff took over the day-to-day management of Defendants' business in May 2022, Skate and Play's cash sales dropped off dramatically as compared to other periods. (Doc. 13 at 14.) In response, Defendants installed a camera with a view of the cash register to monitory Plaintiff and other employees. (Doc. 13 at 14.) That video camera allegedly captured Plaintiff mishandling cash payments at Skate and Play. (Doc. 13 at 15.) Defendants also

---

[3] The Court notes for the purposes of the record that the Parties dispute whether Plaintiff was employed as a manager at Defendants' business.

3

determined that Plaintiff's Daily Reports[4] were inaccurate and did not match the actual amounts of cash in the register. (Doc. 13 at 15.) When Defendants confronted Plaintiff regarding these discrepancies, and the possibility that Plaintiff had embezzled or stolen funds, Plaintiff did not deny that she had not taken money from the business and refused to offer repayment. (Doc. 13 at 15.) Plaintiff's employment was subsequently terminated in August 2022. From February 4, 2022, until August 18, 2022, Defendants admit that they withheld Plaintiff's wages, allegedly as recompense for the payments Plaintiff owed under a Purchase and Lease Agreement that shall be explained below. (Doc. 13 at 7.) Accordingly, Plaintiff was never paid any wages by Defendants. (Doc. 1 at 5.)

Prior to being hired at Skate and Play, Plaintiff lived in Minnesota. (Doc. 1 at 5.) Plaintiff appears to have relocated from Minnesota to Valdosta, GA based on Defendants' promise to pay her a monthly salary of $5,000. (*Id.*) In order to facilitate this move, at some point before January 1, 2022, Plaintiff, Roshni Patel, approached Defendants to request Defendants' assistance with the purchase of a home located at 1102 Meadow Road, Valdosta, Georgia 31605 ("the House"). (Doc. 13 at 10.) Plaintiff requested Defendants' assistance as Plaintiff was unable to procure financing for the home on her own. (*Id.*, at 11.) Defendants consented and entered into an agreement with Plaintiff.

Per the terms of their agreement, Plaintiff was to provide Defendants with $60,000[5] to be used as a down payment, while Defendant, Janki Patel, would take out a mortgage to finance the purchase of the house for use by Plaintiff. (*Id.*) Plaintiff was expected to lease the home from Defendants, eventually take over the mortgage and make monthly rental payments, in the amount of $2,000, to compensate Defendant, Janki Patel, for the mortgage payments. (*Id.*) The terms of the Parties' rental agreement were memorialized in a written contract (Doc. 13-1), but that document does not touch upon the terms of the Parties' mortgage agreement. That rental agreement also included a repair clause. (Doc. 13-1.)

---

[4] Daily Reports list the amount of cash and credit card sales each day as well as the amount of cash in the cash register.

[5] The Court notes for the purposes of the record that Plaintiff claims that Plaintiff paid Defendants $85,000 to use as a down payment on the home.

4

According to Defendants, during the twelve months Plaintiff lived in the House, Plaintiff failed to make any of the monthly payments agreed to by the Parties. (Doc. 13 at 12.) Accordingly, on or about November 8, 2022, Defendants, through their limited liability company – Vyom Enterprises LLC – obtained a dispossessory Order requiring Plaintiff to move out of the House. (Doc. 13 at 12.) Upon exiting the House, Plaintiff failed to make necessary repairs as required by the rental agreement. (Doc. 13 at 13.)

## STANDARD OF REVIEW

Attacks on subject matter jurisdiction under Federal Rule Civil Procedure 12(b)(1) come in one of two forms, facial or factual. A facial attack on the complaint "require[s] the court merely to look and see if the [plaintiff] has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in [the] complaint are taken as true for the purposes of the motion." *Lawrence v. Dunbar*, 919 F.2d 1525, 1528 (11th Cir. 1990) (quoting *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir.), *cert denied*, 449 U.S. 953 (1980.) Factual attacks, on the other hand, challenge "the existence of subject mater jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered."

In the present case, Plaintiff has made a facial attack on Defendants' counterclaims. Accordingly, when considering Plaintiff's Motion to Dismiss Defendants' Counterclaims (Docs. 10 & 14) the Court shall assume that the facts as alleged by Defendants are true and cast them in the light most favorable to Defendants. *Quality Foods de Centro America S.A. v. Latin American Agribusiness Dev. Corp. S.A.,* 711 F.2d 989, 994 (11th Cir. 1983.)

## DISCUSSION

As stated *supra*, Plaintiff contends that Defendants' Counterclaims as well as Amended Counterclaims (Docs. 8 & 13) should be dismissed pursuant to Federal Rule Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, or in the alternative because Defendants' counterclaims would violate the *Brennan* rule. (Docs. 10 & 14.) As the exercise of jurisdiction over Defendants counterclaims would violate the *Brennan* rule, the Court declines to reach the merits of Plaintiff's Fed. R. Civ. P. 12(b)(1) arguments at this time.

The *Brennan* rule holds that "[s]et-offs against back pay awards deprive the employee of the 'cash in hand' contemplated by the [FLSA], and are therefore inappropriate in any proceeding brought to enforce the FLSA minimum wage and overtime provisions." 491 F.2d at 4. It is for this reason that "payroll deductions to compensate for debts owed by an employee to his employer [are] impermissible if they operate[] to reduce income below the wage floor prescribed by the FLSA." *Id.* (citing *Brennan v. Veterans Cleaning Service, Inc.,* 482 F.2d 1362 (5th Cir. 1973)). The decision to not account for debts owed by an employee to their employer aligns with the purpose of the Act, because the "only economic feud contemplated by the FLSA involves the employer's obedience to minimum wage and overtime standards." *Id.*

It is for this reason that courts within the United States Court of Appeals for the Eleventh Circuit have been "hesitant to allow employers to assert state-law counterclaims against employees in FLSA cases." *Pioch v. IBEX Eng'g Servs.,* 825 F.3d 1264, 1273 (11th Cir. 2016.) However, *Brennan* does not absolutely preclude the assertion of counterclaims in FLSA cases as Plaintiff concedes. (Doc. 14 at 6.) Rather, courts have found that counterclaims are permissible "so long as [the counterclaim] does not cause an employee's wages to fall below the statutory minimum." *Sotelo v. Interior Glass Design*, 2017 U.S. Dist. LEXIS 228461 (August S.D. FL) (collecting cases).

In the present case, the exercise of jurisdiction over Defendants' counterclaims would violate the *Brennan* rule as Defendants admit that they never paid Plaintiff any wages from February 4, 2022, until August 18, 2022. (Doc. 13 at 7.) Defendants withheld Plaintiff's wages, allegedly as recompense for the payments Plaintiff owed under a Purchase and Lease Agreement detailed *supra.* (Doc. 13 at 7.) Accordingly, if the Court permitted Defendants' counterclaims to proceed, any counterclaim award or set off that Defendants received would reduce Plaintiff's wages below the statutory minimum in violation of *Brennan.*

While 29 U.S.C. § 203(m), a statutory exception, would permit an employer to offset an employee's wages through the provisioning of housing, Defendants have not alleged facts that would support a finding that 29 U.S.C. § 203(m) applies. 29 U.S.C. § 203(m) permits an employer to furnish an employee "with board, lodging, or other facilities," as part of an employee's wages, "if such board, lodging, or other facilities are customarily furnished by such

6

employer to his employees." Defendants at no point allege that the housing they furnished Plaintiff was customarily furnished by them as employers to their employees, and therefore that exception is not applicable in the present case as pled.

Accordingly, as permitting Defendants' counterclaims to proceed in this action would violate the *Brennan* rule by causing Plaintiff's wages to fall further below the statutory minimum, and even into the negatives, Plaintiff's Motion to Dismiss Defendants' Amended Counterclaims (Doc. 14) is **GRANTED**.

## CONCLUSION

In conclusion, as the exercise of jurisdiction over Defendants' amended counterclaims would violate the *Brennan* rule, Plaintiff's Motion to Dismiss Defendants' Amended Counterclaims (Doc. 14) is **GRANTED**. It is hereby **ORDERED** that Defendants' counterclaims for (1) breach of contract, failure to make rental payments, (2) breach of contract, failure to repair, (3) unjust enrichment or quantum meruit, (4) fraud, (5) money had and received or unjust enrichment, and (6) breach of fiduciary duty are **DISMISSED without prejudice**. As it is not necessary to do so, the Court declines to reach Plaintiff's 12(b)(1) jurisdictional arguments at this time, and they're accordingly **DENIED as MOOT**.

In addition, it is also hereby **ORDERED** that Plaintiff's original Motion to Dismiss Defendants' Counterclaims (Doc. 10) which was made on almost entirely the same grounds as Plaintiff's Motion to Dismiss Defendants' Amended Counterclaims is **DENIED as MOOT**. Finally, as the relief requested in Plaintiff's Motion to Partially Stay Discovery (Doc. 12) can no longer be afforded with the dismissal of Defendants' counterclaims, Plaintiff's Motion to Partially Stay Discovery as to Defendants' State-law counterclaims is **DENIED as MOOT**.

**SO ORDERED**, this 22nd day of March, 2023.

/s/ W. Louis Sands
**W. LOUIS SANDS, SR. JUDGE**
**UNITED STATES DISTRICT COURT**